IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**FOREMOST INSURANCE COMPANY**                             **PLAINTIFF**

**V.**                                                                     **CAUSE NO. 3:14-CV-804-CWR-FKB**

**WAYNE FREEMAN**                                                **DEFENDANT**

## ORDER

Before the Court is the plaintiff's motion for summary judgment. Docket No. 23. The matter is fully briefed and ready for adjudication.

**I.  Factual and Procedural History**

The following facts are undisputed. *See* Docket Nos. 23 & 26.

Wayne Freeman, a mechanic, has worked for Charles Pendleton for over a decade. In 2013, Freeman bought Pendleton's 1971 Chevelle. Pendleton kept a lien on the vehicle. Freeman then took out a $75,000 automobile insurance policy with Foremost Insurance Company.

In March 2014, Freeman used Pendleton's tow dolly to attempt to move the Chevelle from Pendleton's home to another mechanic's shop. While on the road, the Chevelle came off the dolly and hit a tree. Pendleton arrived and helped Freeman re-secure the vehicle to the dolly. Within a mile, though, it detached again. This time the Chevelle collided with a truck and caught fire. The Chevelle and the truck were completely destroyed.

Freeman made an insurance claim. The company investigated the accident and attempted to schedule an examination under oath ("EUO"). Freeman agreed, with two conditions. First, he could not attend during business hours because Pendleton would not let him out of work to

attend the EUO. Second, Freeman would not testify without Pendleton at his side.[1] Pendleton is not an attorney.

Foremost was willing to yield on the first condition, but not the second. The EUO was cancelled and this suit followed. Foremost seeks a declaration that it has no duty to pay the claim because Freeman refused to sit for the EUO without Pendleton's assistance. Freeman has counterclaimed for breach of contract. He seeks $75,000 in compensatory damages and $2 million in punitive damages.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would

---

[1] This was not Pendleton's first encounter with an insurance company's claim process. In another lawsuit before this Court, Progressive Insurance Company alleged that Pendleton had "made false statements to law enforcement" about a January 2014 accident in which his 1956 Mercedes convertible collided with a vehicle driven by Pendleton's associate George Reed, resulting in a six-figure insurance claim. *Progressive Gulf Ins. Co. v. Reed*, No. 3:14-CV-400-CWR-FKB, 2015 WL 3504827, at *1 (S.D. Miss. June 3, 2015); *see also* Docket Nos. 20-21 of Civil Action No. 3:14-CV-400-CWR-FKB. The case settled.
    Returning to today's case, Freeman has admitted that he was involved in another automobile accident claim involving Pendleton and Reed. Docket Nos. 23 & 26.

prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

**III.    Discussion**

    **A.    Substantive Law**

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

Under Mississippi law, "clauses in insurance policies which authorize insurers to conduct examinations under oath are reasonable and valid." *Monticello Ins. Co. v. Mooney*, 733 So. 2d 802, 806 (Miss. 1999) (citations omitted). Insureds who have agreed to EUO clauses "are required to respond to all reasonable inquiries and to give all reasonable assistance and that failure to do so may well deny them recovery." *Allison v. State Farm Fire & Cas. Co.*, 543 So. 2d 661, 664 (Miss. 1989). Producing documents or written responses is not enough. *See Boston Ins. Co. v. Mars*, 148 So. 2d 718, 720 (Miss. 1963). "Further, if an insured, for a valid reason, is unable to attend an examination under oath, it is incumbent upon the insured, as soon as possible, to offer to submit to an examination at a later date." *Home Ins. Co. v. Olmstead*, 355 So. 2d 310, 313 (Miss. 1978) (citations omitted).

    **B.    Analysis**

Was it reasonable for Foremost to insist on examining Freeman without Pendleton in the room? Yes.

First, Freeman and Pendleton were witnesses to the condition of the vehicle, the attachment of the dolly, and the other events that transpired the day of the accident. It was

perfectly reasonable for Foremost to seek to interview one witness without the other's input or reaction. Witnesses often see accidents from different perspectives and remember different things, so it is logical for a fact-finder to try and secure everyone's independent version of the events before putting the puzzle pieces together. Freeman acknowledged as much in his deposition when he stated that Pendleton knew "different things I didn't know."

Foremost was also entitled to inquire into its insured's finances – to determine whether Freeman had a motive to cause the accident – without immediately tipping off a beneficiary (or arguable co-conspirator) as to its line of inquiry or stage of investigation. *Mooney*, 733 So. 2d at 806. It is, after all, well-established that insurance companies may take reasonable steps "to protect them against false claims." *Standard Ins. Co. of N. Y. v. Anderson*, 86 So. 2d 298, 301 (Miss. 1956) (quoting *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 95 (1884)).

Freeman responds that "this was not a court proceeding where the rule of sequestration of witnesses would apply." Docket No. 27, at 5. That may be true, but it is not controlling.[2] The issue is not whether an EUO is a court proceeding with its attendant rules. It is not. The issue is whether Foremost's condition was reasonable. It was. As the United States Supreme Court has written, separation of witnesses reasonably "exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid." *Geders v. United States*, 425 U.S. 80, 87 (1976) (citing Wigmore on Evidence).

The final reason why separation of witnesses was acceptable in this case is that Pendleton had a great deal of leverage over Freeman. Pendleton was Freeman's longtime employer. He also was the lienholder on Freeman's vehicle. That means he had a financial interest in being repaid –

---

[2] Two Justices of the Mississippi Supreme Court *have* pointed to the rules of evidence to explain aspects of EUO cases. *See, e.g.*, *Mooney*, 733 So. 2d at 809 (McRae, J., dissenting) (reciting, in a procedural history, that an insurance company initially attempted to have the insured's spouse – who was not a named insured – give a sworn statement, despite the spousal privilege contained in Mississippi Rule of Evidence 504).

presumably with the insurance proceeds. Pendleton had so much control over Freeman, in fact, that he refused to give Freeman time off to attend an EUO during work hours.[3]

Against this backdrop it was reasonable for Foremost to not allow its insured's employer and lienholder to sit in on the EUO. One would not want an employer, bank, or other powerful institution to hover over sworn testimony – at least not if we are interested in the truth, the whole truth, and nothing but the truth. The risk of the powerful person or entity improperly influencing the testimony is just too great. *See* 1 McCormick on Evid. § 50 (7th ed. updated Mar. 2013).

To all this, Freeman's attorney argues that Pendleton was a necessary participant because Freeman is "illiterate" and "unfamiliar with the EUO process." The evidence, though, shows that Freeman can read and write, even if he is not highly educated. And there were other persons, like attorneys (or simply other individuals who were not involved in the events), from whom Freeman could have sought assistance to understand or attend the EUO. Neither of Freeman's final arguments can overcome Mississippi law.

For these reasons, Foremost is entitled to its declaratory judgment. This ruling essentially renders irrelevant Freeman's breach of contract counterclaim. To the extent it does not, however, Freeman has not pointed to any disputed material fact indicating breach of contract or bad faith denial of insurance benefits. The counterclaim cannot proceed to trial. *Accord Evans v. Safeway Ins. Co.*, No. 1:12-CV-222-HSO-RHW, 2013 WL 3873043, at *5 (S.D. Miss. July 25, 2013).

**IV.  Conclusion**

The motion is granted. A separate Final Judgment will issue this day.

**SO ORDERED**, this the 29th day of January, 2016.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE

---

[3] Pendleton's refusal is surprising since he would have benefitted from Freeman's successful recovery.